## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WARDELL ROBINSON**                                   **CIVIL ACTION**

**VERSUS**                                             **NO. 19-9915**

**LISA – JANE DOE, ET AL.**                            **SECTION "T"(4)**

## PARTIAL REPORT AND RECOMMENDATION

Before the Court is the **Motion to Dismiss Pursuant to 12(b)(1) and 12(b)(6) (Rec. Doc. No. 18)** filed by the defendant, Patrick Egan. Egan moves for dismissal of plaintiff Wardell Robinson's claims against him for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), because he was not acting under color of law as required by 42 U.S.C. § 1983. He also asserts that the claims should be dismissed as premature under Fed. R. Civ. P. 12(b)(6), because Robinson failed to exhaust the administrative grievance process before filing this suit. Robinson has not filed an opposition.

The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). On August 27, 2019, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 21. Robinson gave sworn testimony, and the hearing was digitally recorded.

I.      **Factual and Procedural Background**

A.      **The Complaint**

The plaintiff, Wardell Robinson ("Robinson"), is a convicted inmate housed in the Plaquemines Parish Detention Center ("PPDC") in Point-A-La-Hache, Louisiana.[3] Robinson filed this *pro se* and *in forma pauperis* complaint against the defendants, PPDC, Medical Director Lisa Ancalade, Annette Logsdon RN, and Patrick Egan. Robinson alleges that, on April 7, 2019, he fell out of his wheelchair while attempting to use a toilet at PPDC. He claims that he requested new wheelchair brakes, and the defendants failed to provide them. He also claims that he injured his back and has acute pain and suffering. He informed the defendants of his pain and requested treatment.

B.      **The *Spears* Hearing**

Robinson testified that he is twenty-seven (27) years old and is serving a ten (10) year sentence for conspiracy to sell narcotics. A car accident left him paralyzed from the waist down, and he is confined to a wheelchair. He stated that earlier this year, he fell from his wheelchair while trying to transfer onto a toilet at the PPDC. He stated that the wheelchair moved causing him to fall and hit his back on the toilet. Two inmates, Kendrick Johnson and Craig Richardson, assisted him, and an incident report was prepared by the jail officials. Robinson also notified the nurse, Ms. Rachel, and the nurse's aide, Ms. Michelle, about the fall. He also claimed that he was not examined or sent to the hospital after the fall.

Robinson further stated that, after the fall and after he filed this suit, he eventually was provided new brakes by Patrick Egan, the owner of Egan Caregivers,[4] the nursing company that

---

[3]Rec. Doc. No. 6.

[4]The plaintiff and the prison records provide several versions of this company name. Egan's Motion to Dismiss (Rec. Doc. No. 18) reflects the name to be Egan Caregivers.

provides care for the paraplegics at the jail.  He explained that the prison nurses do not care for the paraplegics; he instead receives his care from the Egan company employees.

Robinson stated that his brakes were broken for a year and all of the deputies and medical personnel knew about it from his verbal complaints.  He claimed that he also advised Lisa Ancalade, a nurse with the Egan company, and Ms. Rachel, and they told the other prison nurses.

Robinson testified that he sued PPDC because he did not know who he was supposed to sue.  He stated that he included all of the people that knew about the broken brakes.  He sued Annette Logsdon because she is the head nurse and everything that went on was under her control.  He also stated that he and Ancalade both told Logsdon about his broken brakes, and she did not do anything about it.

He sued Patrick Egan because he was the owner of Egan Caregivers and knew about the broken brakes as well.  Robinson testified that he did not speak directly to Eagan about the brakes because when Egan and his father were at the prison, Robinson was not allowed to see him.  Robinson also claimed that he was repeatedly told by the nurses that they were waiting for the Sheriff's office to approve new brakes and that Patrick Egan had to get them.  At one point, he was told the brakes were ordered but that Egan received the wrong part and had to wait for the correct one.

Robinson also testified that he attempted to use the prison's grievance system to complain about the broken brakes and his fall, but the kiosk would "freeze" and tell him his complaint was pending.  He also claims that he requested two or three times through the kiosk to be taken to the hospital,  but he got no response and did not go to the hospital.

In connection with the *Spears* Hearing and Robinson's testimony, the Court directed defense counsel to provide documents indicating when the wheelchair brake was replaced, copies

of Robinson's grievances related to the broken brake, and any medical care requests after the incident.[5]  The inmate grievance records contain only one submission dated April 30, 2019, weeks after the fall, when Robinson complained that the wheelchair brake had been broken since August 7, 2018, and nothing was done about it despite his complaints to prison staff.  He also indicated in that grievance complaint that, because it was not repaired, he fell on the floor and was having severe back pain.  The response entered by Lisa Ancalade on May 30, 2019, one month later, reads as follows:

> Brake has been replaced.  No previous request regarding broken brake found.
> Informed of broken brake by Dy. S. Lott, who attempted to repair the brake but was
> unable to.  Notified Lt. Jourdan who said to obtain the brake through Egan Care.
> Brake info. obtained from Dy. Lott and forwarded to Mr. Egan.  1st received wrong
> brake, notified Mr. Egan who had correct part sent.  Brake replaced by Maintenance
> Officer when received.

Ancalade's response to the grievance did not address Robinson's complaint of injury or pain.  However, the records provided also contain a Chronic Care Progress Note dated April 9, 2019, two days after the fall, indicating that Robinson received a routine physical assessment by Dr. Charles Mary.  The doctor's notes reflect that Robinson complained of "having chronic pain in entire back" and that Robinson was already receiving Ultram (or tramadol)[6] twice a day for pain.  The note does not indicate where Robinson was seen for this visit.

A second Chronic Care Progress Note reflects that Robinson was seen by Dr. Walter Smith on June 24, 2019, for a routine physical assessment.  Again, the note does not indicate where the visit took place.  Nevertheless, the doctor wrote: "Patient is being seen today secondary to chronic pain.  Patient is presently getting pain medication requesting an [sic] increase."  The doctor also

---

[5]Rec. Doc. No. 21.  The documents received September 5, 2019, have been separately filed in the record under seal.

[6]Ultram is the brand name for tramadol, a medication similar to opioid (narcotic) analgesics used to relieve moderate to moderately severe pain.  https://www.webmd.com/.

indicated that he "[w]ill increase pain medication," although the form does not reflect what change was made.

## II.     Standards of Review

### A.     Standards for Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

B.    **Standards under Fed. R. Civ. P. 12(b)(1)&(6)**

Under Fed. R. Civ. P. 12(b), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter or fails to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(1), (6).  The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted.  *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

To survive a motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff.  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (internal citation omitted).  Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

To determine whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged.  *See Id.*

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards while still guided by the *Iqbal* pleading requirements.  *High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. Jun. 12, 2019).  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court further explained this standard in the prisoner context:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated.  An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14.  Because of this, before dismissing a prisoner complaint, a district court ordinarily should give the *pro se* litigant an opportunity to amend.  *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

III.    <u>**Frivolousness Review**</u>

    A.    <u>**Claims Against PPDC**</u>

Robinson named the PPDC as a defendant because that is where he is housed.  However, the jail is not a proper defendant and the claims against it must be dismissed as frivolous.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights under color of law.  42 U.S.C. § 1983; *see Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).  Under federal law, a county or parish prison facility simply is not recognized as a "person" within the meaning of the statute.  *Douglas v. Gusman*, 567 F. Supp.2d 877, 892 (E.D. La. 2008) (Order adopting Report and Recommendation) (citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3rd Cir. 1973)); *Cullen v. DuPage County*, No. 99-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97-0420, 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982).

In addition, a parish prison is not a proper defendant because it lacks capacity to sue or be sued as required by Rule 17(b) of the Federal Rules of Civil Procedure and state law.  An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits.  Fed. R. Civ. P. 17(b).  Although the Louisiana courts have not ruled on the issue of whether a parish jail is a suable entity, this Court must look to Louisiana law to determine if a jail like PPDC can be sued.

To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person."  This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code art. 24.  In *Roberts v.*

*Sewerage and Water Board of New Orleans*, 634 So. 2d 341 (La. 1994), the Louisiana Supreme Court held that, to determine an entity's juridical status, a court must consider "whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue." Ultimately, the *Roberts* court resolved that "[s]uch a determination will depend on an analysis of specifically what the entity is legally empowered to do." *Id*. at 346-47.

Louisiana law divides the responsibility for its parish jails. The parish is charged with its jails' physical maintenance. La. Rev. Stat. Ann. § 15:702. However, the duty to administer and operate the jails falls on the sheriff of each parish. La. Rev. Stat. Ann. § 15:704. The office of sheriff is a constitutionally created office in Louisiana, existing separately from the parish government. La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2nd Cir. 1991) (holding that the parish could not be liable for injuries attributed to the sheriff).

Under the *Roberts*'s framework, jail facilities are not "legally empowered to do" anything independently of either the respective parish officials or the parish sheriff. *See Roberts*, 634 So. 2d at 347. The prison instead is not a separate entity, but merely a shared branch or facility of these greater entities. For these reasons, this Court has held that "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas*, 567 F. Supp.2d at 892. In other words, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also, Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174 (E.D. La. Aug, 10, 2015).

For these reasons, the PPDC is not a person or suable entity to be held liable under § 1983. The claims against the PPDC are frivolous and otherwise fail to state a claim for which relief can be granted.

### B.    Deliberate Indifference

Broadly construed, Robinson claims that the defendants were deliberately indifferent to a serious risk to his health and safety when they failed to timely repair his wheelchair break which led to his fall and injury.  As outlined previously, Robinson asserts his claims against Medical Director Lisa Ancalade, Annette Logsdon RN, and Patrick Egan.  Robinson asserts that Logsdon was the head nurse at and works for the PPDC.  He also testified that Ancalade and Egan are associated with Egan Caregivers which provides all of the nursing services at the prison for the paraplegics.

Under § 1983, both prison personnel and those fulfilling the prison officials' duty to provide medical care are treated as persons acting under color of law.  *See* La. Rev. Stat. Ann. § 15:703; *see also Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002).  The Egan company employees, Ancalade and Egan, are state actors under § 1983 despite the fact that the company is a private entity.  *See*, *Grandpre v. Correct Health*, No. 16-1543, 2016 WL 4539442, at *8 (E.D. La. Aug. 29, 2016) ("The Court first recognizes that CorrectHealth is the private corporation contracted to operate the medical services within JPCC, and the company and its employees are subject to liability as state actors under § 1983."), *adopted*, 2016 WL 4987265 (E.D. La. Sept. 19, 2016); *Shadrick v. Hopkins County, Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) ("[P]rivate corporations performing traditional state functions, such as the provision of medical services to prison inmates, act under color of state law for purposes of § 1983."); *accord Watson v. Jefferson Parish Corr. Ctr.*, No. 19-0911, 2019 WL 1318198, at *2 n.3 (E.D. La. Mar. 6, 2019),

*adopted*, 2019 WL 1316400, at *1 (E.D. La. Mar. 22, 2019) (citing *Grandpre*).  To state a claim under § 1983 against these state actors, Robinson must establish that each defendant violated his constitutional rights.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

In *Estelle v. Gamble*, 429 U.S. at 97, the Supreme Court set the standard of conduct for providing care for an inmate's serious medical needs under the Eighth Amendment.  The Court held that deliberate indifference to the health and safety of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.  *Id*. at 104.  This is true where the indifference is manifested by prison officials or medical personnel in their response to the prisoner's serious medical needs.  *Id*.  It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  *Id*.  To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.  *Id*.

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  The *Farmer* definition applies to Eighth Amendment medical claims.  *Reeves*, 27 F.3d at 176.  Thus, for a plaintiff to demonstrate that a prison official has violated his Eighth Amendment right to adequate medical care, he must establish two factors. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and second, the "prison official must have a 'sufficiently

culpable state of mind,' . . . one of "deliberate indifference" to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation and citations omitted).

The failure to repair an inmate's wheelchair does constitute the denial of a serious medical need under the *Farmer* objective prong when the failed function of the wheelchair could lead to injury and the wanton infliction of pain. *See, e.g.*, *McCants v. Berringer*, No. 17-935, 2018 WL 3764266, at *3 (M.D.N.C. Aug. 8, 2018); *Roberts v. McDonald*, No. 22-0474, 2013 WL 3283351, at *8 (E.D. Cal. Jun. 27, 2013), *adopted*, 2013 WL 4094389, at *1 (E.D. Cal. Aug. 13, 2013); *see also*, *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) ("The failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances.") Turning to the subjective prong, Robinson has at least alleged that the defendants were aware of this need and failed to take steps to avoid his injury.

Specifically, Robinson alleges that he notified defendants Ancalade and Logsdon several times over the course of the year before his fall that the brake on his wheelchair was broken. Moreover, according to Robinson's *Spears* Hearing testimony, his written complaints about the broken wheelchair could not be found in the kiosk system. Broadly construed, Robinson asserts that this made it look like he did not report the brakes and made no complaints before the fall. If, as he alleges, Robinson orally or in writing notified Ancalade and Logsdon that his wheelchair, his sole means of movement and stability, was in disrepair and they failed to take action to ensure its repair, this would constitute deliberate indifference. *See Roberts v. McDonald*, 2013 WL 3283351, at *8 (denying motion to dismiss for failure to state a claim when plaintiff alleged defendants did not repair the wheelchair when he made administrative requests, only conceded the unsafe condition of the chair after plaintiff filed for relief in state court, and then lied about the status of repairs to avoid having it repaired).

As for defendant Egan, the same is alleged to be true. Although plaintiff concedes that he was not allowed to talk directly to Egan about his broken wheelchair, he was told by the nurses on multiple occasions that Egan was the person responsible for wheelchair repairs and that Egan had been apprised by his staff and/or prison personnel of the broken brake. Robinson also asserts that, despite this knowledge, Egan took no action to have it repaired until after Robinson fell and was injured. Even a supervisor may be liable under § 1983 when he turns a blind eye to an inmate's request for medical provisions. *See Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996).

At this point in the litigation, the plaintiff has at least alleged sufficient facts to state a claim of deliberate indifference against Egan, Ancalade, and Logsdon. *See Brown v. Castillo*, No. 02-06018, 2007 WL 3054165 at *15 (E.D. Cal. Oct.19, 2007) (denying qualified immunity because "[n]o reasonable officer would believe that allowing a wheelchair-bound inmate to ride in a wheelchair in need of repair could not have resulted in a substantial risk to inmate health and safety.") The claims against these defendants are not facially frivolous and should be allowed to proceed.

## IV.    Egan's Motion to Dismiss (Rec. Doc. No. 18)

In his motion to dismiss, Egan asserts that Robinson's complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction because he does not work at the prison and owns the private company, Egan Caregivers. He also asserts that, as a private person, he was not acting under color of law and cannot be held liable under § 1983; therefore, plaintiff's claims must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Egan also asserts that the complaint is premature because Robinson failed to exhaust administrative remedies before filing

this suit.  For the reasons already discussed in the Court's frivolousness review, Egan's motion must be denied.

First, contrary to Egan's arguments, the law is well settled that companies like Egan Caregivers, and its employees, that fulfill the Parish or prison officials' duty to provide medical care under La. Rev. Stat. Ann. § 15:703 are considered persons acting under color of law for purposes of § 1983.  *Grandpre*, 2016 WL 4539442, at *8 ; *see also Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d at 766 n.6; *Shadrick*, 805 F.3d at 736.  Robinson alleges that Egan and his company provide all of the medical care for the paraplegics housed at PPDC and that care is provided to the inmates in the PPDC facility.  The care provided to the inmates on behalf and in lieu of the Parish and prison officials render Egan's arguments unavailing.

Second, the Court without doubt has subject matter jurisdiction over Robinson's § 1983 claims.  28 U.S.C. § 1331.  Egan apparently conflates the Court's subject matter jurisdiction with the issue of his status as a person or state actor under § 1983.  To that end, although Egan may not have been present when plaintiff fell and does not maintain a regular presence at the jail, the allegations before the Court and the prison administrative records indicate that Egan was the sole person authorized to and responsible for ordering the brake parts needed to repair Robinson's wheelchair.  Furthermore, Robinson has alleged that Egan was advised before the fall that the brakes were broken, and he failed to order the parts to facilitate repair.  Robinson has presented plausible allegations against Egan sufficient to state a claim under § 1983.

Third, Egan cursorily argues that Robinson's complaint is premature for his failure to exhaust administrative remedies, because he marked "no" on the form complaint.[7]  Pursuant to 42 U.S.C. § 1997e(a), "no action shall be brought with respect to prison conditions under § 1983 of

---

[7]*See* Rec. Doc. No. 6-1, p. 2, Question I, C.

this title, or any other Federal Law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003); *Clifford v. Gibbs*, 298 F.3d 328, 329 (5th Cir. 2002). Exhaustion is an affirmative defense and when asserted, is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *see also*, *Jones v. Brock*, 549 U.S. 199, 216 (2007).

Furthermore, prisoners "must exhaust such administrative remedies as are available, whatever they may be." (citations and internal quotation marks omitted) *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). The Supreme Court has held that the exhaustion requirement mandates "proper exhaustion," which means compliance with whatever the prison has proscribed as procedural rules and deadlines. *Woodford*, 548 U.S. at 92-93. Substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Unless the prisoner pursues his "grievance remedy to conclusion," he has not exhausted "available remedies." *Id*.; *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford*, 298 F.3d at 330.

When a prisoner fails to exhaust his administrative remedies prior to filing suit, and does so without a valid excuse, a court properly dismisses the action without prejudice to its refiling after the prisoner exhausts his administrative remedies. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998). In addition, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright*, 260 F.3d at 358.

In this case, Egan fails to indicate in his motion the process and deadlines required by the PPDC policies for Robinson to have exhausted. As an affirmative defense, it is the defendant's burden to demonstrate each element of the exhaustion defense. *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Without indication from the movant of the PPDC's administrative requirements for Robinson to have exhausted, the Court cannot assume or otherwise resolve whether Robinson had remedies available to exhaust or whether he has fully exhausted.

Furthermore, at this stage, Robinson has at least plausibly provided an excuse for any failure to completely exhaust. During the *Spears* Hearing, the Court inquired about Robinson's efforts to pursue grievances complaints for repairs and medical care at the prison. Robinson responded that he was frozen out of the kiosk at some point and that he later was advised that his written complaints could not be found in the system. Assuming this to be true, Robinson has at least provisionally provided an excuse for any alleged failure to exhaust.

For the foregoing reasons, Egan's **Motion to Dismiss Pursuant to 12(b)(1) and 12(b)(6) (Rec. Doc. No. 18)** must be denied.

## V.     Recommendation

It is therefore **RECOMMENDED** that the plaintiff Wardell Robinson's § 1983 claims against the Plaquemines Parish Detention Center be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that defendant Patrick Egan's **Motion to Dismiss Pursuant to 12(b)(1) and 12(b)(6) (Rec. Doc. No. 18)** be **DENIED**.

Upon adoption of this Partial Report and Recommendation, Robinson's § 1983 claims of deliberate indifference against the defendants Ancalade, Logsdon, and Egan should remain referred to the undersigned Chief Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[8]

New Orleans, Louisiana, this 25th day of November, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[8]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.