UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WARDELL ROBINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-9915** |
| **LISA – JANE DOE, ET AL.** | **SECTION "T"(4)** |

### PARTIAL REPORT AND RECOMMENDATION

Before the Court is the **Motion to Dismiss (Rec. Doc. No. 36)** filed by the defendant, Annette Logsdon. Logsdon moves for dismissal of plaintiff Wardell Robinson's claims against him for lack of jurisdiction under Fed. R. Civ. P. 12(b)(6), or in the alternative, that Plaintiff's claims be dismissed in their entirety as premature because Robinson has not exhausted the administrative remedies. Robinson has not filed an opposition.

The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). On August 27, 2019, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.   Factual and Procedural Background

#### A.   The Complaint

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 21. Robinson gave sworn testimony, and the hearing was digitally recorded.

The plaintiff, Wardell Robinson ("Robinson"), is a 28 year-old convicted inmate housed in the Plaquemines Parish Detention Center ("PPDC")[3] in Point-A-La-Hache, Louisiana.[4] On April 29, 2019, Robinson filed this *pro se* and *in forma pauperis* complaint against the defendants, PPDC, Medical Director Lisa Ancalade, Annette Logsdon RN, and Patrick Egan. Robinson alleges that, on April 7, 2019, he fell out of his wheelchair while attempting to use a toilet at PPDC and injured his back and experienced acute pain.

He claims that he requested new wheelchair brakes, and the defendants failed to provide them. He also claims that he injured his back and has acute pain and suffering. He informed the defendants of his pain and requested treatment. He acknowledges that he did not file a grievance but indicates that he needed help completing it. Robinson seeks medical treatment and damages of $10,000 for pain and suffering and additional damages as warranted by the Court.

**B.     The *Spears* Hearing**

Robinson testified that he is serving a ten (10) year sentence for conspiracy to sell narcotics. He states that a car accident left him paralyzed from the waist down, and he is confined to a wheelchair. He stated that earlier this year, he fell from his wheelchair while trying to transfer onto a toilet at the PPDC. He stated that the wheelchair moved causing him to fall and hit his back on the toilet. Two inmates, Kendrick Johnson and Craig Richardson, assisted him, and an incident report was prepared by the jail officials. Robinson also notified the nurse, Ms. Rachel, and the nurse's aide, Ms. Michelle, about the fall. He also claimed that he was not examined or sent to the hospital after the fall.

---

[3] The claim against Plaquemine Parish Detention Center was dismissed on May 29, 2020. *See* Rec. doc. 27.
[4] Rec. Doc. No. 6.

Robinson further stated that, after the fall and after he filed this suit, he eventually was provided new brakes by Patrick Egan, the owner of Egan Caregivers,[5] the nursing company that provides care for the paraplegics at the jail. He explained that the prison nurses do not care for the paraplegics; he instead receives his care from the Egan company employees.

Robinson stated that his brakes were broken for a year and all of the deputies and medical personnel knew about it from his verbal complaints. He claimed that he also advised Lisa Ancalade, a nurse with the Egan company, and Ms. Rachel, and they told the other prison nurses.

Robinson testified that he sued PPDC because he did not know who he was supposed to sue. He stated that he included all of the people that knew about the broken brakes. He sued Annette Logsdon because she is the head nurse and everything that went on was under her control. He also stated that he and Ancalade both told Logsdon about his broken brakes, and she did not do anything about it.

He sued Patrick Egan because he was the owner of Egan Caregivers and knew about the broken brakes as well. Robinson testified that he did not speak directly to Eagan about the brakes because when Egan and his father were at the prison, Robinson was not allowed to see him. Robinson also claimed that he was repeatedly told by the nurses that they were waiting for the Sheriff's office to approve new brakes and that Patrick Egan had to get them. At one point, he was told the brakes were ordered but that Egan received the wrong part and had to wait for the correct one.

Robinson also testified that he attempted to use the prison's grievance system to complain about the broken brakes and his fall, but the kiosk would "freeze" and tell him his complaint was

---

[5]The plaintiff and the prison records provide several versions of this company name. Egan's Motion to Dismiss (Rec. Doc. No. 18) reflects the name Egan Caregivers.

pending. He also claims that he requested two or three times through the kiosk to be taken to the hospital, but he got no response and did not go to the hospital.

In connection with the *Spears* Hearing and Robinson's testimony, the Court directed defense counsel to provide documents indicating when the wheelchair brake was replaced, copies of Robinson's grievances related to the broken brake, and any medical care requests after the incident.[6] The inmate grievance records contain only one submission dated April 30, 2019, weeks after the fall, when Robinson complained that the wheelchair brake had been broken since August 7, 2018, and nothing was done about it despite his complaints to prison staff.

He also indicated in that grievance complaint that, because it was not repaired, he fell on the floor and was having severe back pain. The response entered by Lisa Ancalade on May 30, 2019, one month later, reads as follows:

> Brake has been replaced. No previous request regarding broken brake found. Informed of broken brake by Dy. S. Lott, who attempted to repair the brake but was unable to. Notified Lt. Jourdan who said to obtain the brake through Egan Care. Brake info. obtained from Dy. Lott and forwarded to Mr. Egan. 1st received wrong brake, notified Mr. Egan who had correct part sent. Brake replaced by Maintenance Officer when received.

Ancalade's response to the grievance did not address Robinson's complaint of injury or pain. However, the records provided also contain a Chronic Care Progress Note dated April 9, 2019, two days after the fall, indicating that Robinson received a routine physical assessment by Dr. Charles Mary. The doctor's notes reflect that Robinson complained of "having chronic pain

---

[6]Rec. Doc. No. 21. The documents received September 5, 2019, have been separately filed in the record under seal.

4

in entire back" and that Robinson was already receiving Ultram (or tramadol)[7] twice a day for pain. The note does not indicate where Robinson was seen for this visit.

A second Chronic Care Progress Note reflects that Robinson was seen by Dr. Walter Smith on June 24, 2019, for a routine physical assessment. Again, the note does not indicate where the visit took place. Nevertheless, the doctor wrote: "Patient is being seen today secondary to chronic pain. Patient is presently getting pain medication requesting An [sic] increase." The doctor also indicated that he "[w]ill increase pain medication," although the form does not reflect what change was made.

## II.     Standards of Review

### A.     Standards for Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not

---

[7]Ultram is the brand name for tramadol, a medication similar to opioid (narcotic) analgesics used to relieve moderate to moderately severe pain. *See* https://www.webmd.com/drugs/2/drug-11276/ultram-oral/details (last access: Nov. 18, 2020).

exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### B. Standards under Fed. R. Civ. P. 12(6)

Under Fed. R. Civ. P. 12(b), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter or fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The United States Supreme Court has explained:

6

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

To determine whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id*.

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards while still guided by the *Iqbal* pleading requirements. *High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. Jun. 12, 2019). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court further explained this standard in the prisoner context:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14.  Because of this, before dismissing a prisoner complaint, a district court ordinarily should give the *pro se* litigant an opportunity to amend.  *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claims.  *Collins v. Morgan Stanley Dean Witter,* 224 F. 3d 496, 498-99 (5th Cir. 2000)  "If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Tuley v. Heyd*, 482 F.2d 590, 593 (5th Cir. 1973)).

### III.    Claims Against Logsdson

Robinson named Nurse Logsdon as a defendant.  He alleges that he complained to her about the wheels of his wheelchair needed replacing and that she did nothing.

Logsdon contends that Robinson's claim is self-serving and inaccurate, and she asserts three main reasons why the claim against her should be dismissed.  First, Logsdon contends that Robinson, a paraplegic, was cared for specifically by the Egan staff and not Logsdon or other prison medical staff. Second, the only evidence of a grievance submitted by Robinson was submitted to an Egan employee and her. Third, there is no evidence of a sick call request by Robinson before he fell out of the wheelchair that its wheels were broken.

In *Estelle v. Gamble*, 429 U.S. at 97, the Supreme Court set the standard of conduct for providing care for an inmate's serious medical needs under the Eighth Amendment.  The Court held that deliberate indifference to the health and safety of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id*. at 104.  This is true where

the indifference is manifested by prison officials or medical personnel in their response to the prisoner's serious medical needs. *Id*. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id*. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The *Farmer* definition applies to Eighth Amendment medical claims. *Reeves*, 27 F.3d at 176. Thus, for a plaintiff to demonstrate that a prison official has violated his Eighth Amendment right to adequate medical care, he must establish two factors. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and second, the "prison official must have a 'sufficiently culpable state of mind,' . . . one of "deliberate indifference" to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation and citations omitted).

The failure to repair an inmate's wheelchair can constitute the denial of a serious medical need under the *Farmer* objective prong when the failed function of the wheelchair could lead to injury and wanton infliction of pain. *See*, *e.g.*, *McCants v. Berringer*, No. 17-935, 2018 WL 3764266, at *3 (M.D.N.C. Aug. 8, 2018); *Roberts v. McDonald*, No. 22-0474, 2013 WL 3283351, at *8 (E.D. Cal. Jun. 27, 2013), *adopted*, 2013 WL 4094389, at *1 (E.D. Cal. Aug. 13, 2013); *see also Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) ("The failure to provide a wheelchair for

an inmate may constitute deliberate indifference to a serious medical need in some circumstances.").

Turning then to the subjective prong, first, Robinson admits that Logsdon was not responsible for his medical care because he is a paraplegic and that Egan's personnel provided medical care to paraplegic inmates. During the *Spears* hearing, Robinson testified that he eventually was provided new brakes by Patrick Egan, the owner of Egan Caregivers, the nursing company that provides care for the paraplegics at the jail. He explained that the prison nurses do not care for the paraplegics; he instead receives his care from the Egan company employees. Rec. doc. 21. Therefore, the allegation that Logdson denied him medical after injuring himself is not supported by the evidence.

Even if Logdson is not a medical provider of Robinson, he alleges that he sought her assistance in securing the replacement of the wheels. Robinson has at least alleged that the defendants were aware of this need for new wheelchair wheels and failed to take steps to avoid his injury.

In order for Robinson to state a claim for deliberate indifference to his serious medical needs which are violative of his Eight Amendment, (1) the official knows of and disregards an excessive risk to inmate health and safety; (2) the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and (3) must also draw the inference. *See Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006) (quoting *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995))(internal citations omitted).

Specifically, Robinson alleges that he notified defendants Ancalade and Logsdon several times over the course of the year before his fall that the brake on his wheelchair was broken. Moreover, according to Robinson's *Spears* hearing testimony, his written complaints about the

10

broken wheelchair could not be found in the kiosk system. In support of her motion, Logsdon directs the court to the medical chart which contains the prescriptive administration history throughout his time at the facility noting no reference to any brake problem. The Court will consider the medical records which have been made a part of the record.

The medicals, which are reasonably incorporated in the complaint, show that on January 3, 2019, Robinson was treated for back pain. Rec. doc. 36-1, p. 282. On May 21, 2019; May 28, 2019; June 18, 2018; June 20, 2019; and June 21, 2019 Robinson was treated for continuous complaints of pain. Rec. doc. 36-2. The records do not distinguish between whether the pain was due to an incident or pain normally attendant to treating a person with paraplegia. *See* Exhibit A, Plaintiff's Medical Chart, at pp. 152-206, 296-297.

The records show that on October 8, 2019, Robinson made a sick call request for doctor's care associated with malfunction of his catheters. He requested the opportunity to see the doctor immediately. The records show that on October 9, 2019, the day after he made the request he was released from the facility and the appointment was deleted. Rec. doc. 36-2.

While Robinson alleges that he fell and hurt his back on April 7, 2019, there are no medical records indicating that he made a request for urgent care like he did when he experienced the catheter problem. Yet, on the same day that Robinson claims he was injured, he was seen on three occasions and was administered Meloxicam, Methocarbamol, Tramadol, Meloxicam, and Methocarbamol. *Id.* Certainly if he had injured himself, he would have complained in one of the three visits. *Id.*

Additionally, Robinson testified that he could not complete a grievance using a kiosk to formally lodge his complaint, but he was able to do so on October 14, 2018 for a commissary problem. The records also show that on April 20, 2019, he lodged a complaint regarding phone

time. Rec. doc. 36-4. Regarding Robinson's complaint about a broken brake, which he indicates in the grievance he had complained about since August 7, 2018, even if it accepted as true, there is no indication in the grievance either by Robinson or the administration that Logsdon had any knowledge of let alone involvement in replacing the brake. *Id.*

The administrative response to the April 20, 2019 grievance, the only written grievance filed by Robinson on the subject, indicates that Robinson told S. Lott about the problem and he attempted to repair the brake but was not able to do so. *Id.* After Lott could not do so he notified Lieutenant Jourdan who instructed Lott to get a brake from Egan, which he did. *Id.* However, he received the wrong brake had to re-notify Egan again and then eventually it was replaced. *Id.*

There is no evidence that he complained to Logsdon. He complained to others and also the grievance form he completed does not reference Logsdon. There is no evidence suggesting that Logsdon knew about his broken brake problem and failed to act.

For the foregoing reasons, Annette Logsdon's **Motion to Dismiss Pursuant to 12(b)(6) (Rec. Doc. No. 36)** be **GRANTED**.

IV. <u>Recommendation</u>

It is therefore **RECOMMENDED** that the plaintiff Wardell Robinson's § 1983 claims against Defendant Annette Logsdon be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Upon adoption of this Partial Report and Recommendation, Robinson's § 1983 claims of deliberate indifference against the defendant Ancalade should remain referred to the undersigned Chief Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[8]

New Orleans, Louisiana, this 20th day of November, 2020.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[8]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.