UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WARDELL ROBINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-9915** |
| **LISA ANCALADE, ET. AL. ET AL.** | **SECTION "KWR"** |

## ORDER AND REASONS

Before the Court is the **Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 by Lisa Ancalade** (Rec. Doc. 44). Robinson has not filed an opposition.

I. **Factual and Procedural Background**

   A.   **The Complaint**

The Plaintiff, Wardell Robinson ("Robinson"), is a convicted inmate housed in the Plaquemines Parish Detention Center ("PPDC") in Point-A-La-Hache, Louisiana.[1] Robinson filed this *pro se* and *in forma pauperis* complaint against the Defendants, PPDC, Medical Director Lisa Ancalade, Annette Logsdon RN, and Patrick Egan. Robinson alleges that, on April 7, 2019, he fell out of his wheelchair while attempting to use a toilet at PPDC. He claims that he requested new wheelchair brakes, and the Defendants failed to provide them. He also claims that he injured his back and has acute pain and suffering. He informed the Defendants of his pain and requested treatment.

   B.   **The *Spears* Hearing**

Robinson testified that he is twenty-seven (27) years old and is serving a ten (10) year sentence for conspiracy to sell narcotics. A car accident left him paralyzed from the waist down, and he is confined to a wheelchair. He stated that earlier this year, he fell from his wheelchair while trying to transfer onto a toilet at the PPDC. He stated that the wheelchair moved causing

---

[1] Rec. Doc. No. 6.

him to fall and hit his back on the toilet.  Two inmates, Kendrick Johnson and Craig Richardson, assisted him, and an incident report was prepared by the jail officials.  Robinson also notified the nurse, Ms. Rachel, and the nurse's aide, Ms. Michelle, about the fall.  He also claimed that he was not examined or sent to the hospital after the fall.

Robinson further stated that, after the fall and after he filed this suit, he eventually was provided new brakes by Patrick Egan, the owner of Egan Caregivers,[2] the nursing company that provides care for the paraplegics at the jail.  He explained that the prison nurses do not care for the paraplegics; he instead receives his care from the Egan company employees.

Robinson stated that his brakes were broken for a year and all of the deputies and medical personnel knew about it from his verbal complaints.  He claimed that he also advised Lisa Ancalade, a nurse with the Egan company, and Ms. Rachel, and they told the other prison nurses.

Robinson testified that he sued PPDC because he did not know who he was supposed to sue.  He stated that he included all of the people that knew about the broken brakes.  He sued Annette Logsdon because she is the head nurse and everything that went on was under her control.  He also stated that he and Ancalade both told Logsdon about his broken brakes, and she did not do anything about it.

He sued Patrick Egan because he was the owner of Egan Caregivers and knew about the broken brakes as well.  Robinson testified that he did not speak directly to Eagan about the brakes because when Egan and his father were at the prison, Robinson was not allowed to see him.  Robinson also claimed that he was repeatedly told by the nurses that they were waiting for the Sheriff's office to approve new brakes and that Patrick Egan had to get them.  At one point, he

---

[2]The plaintiff and the prison records provide several versions of this company name.  Egan's Motion to Dismiss (Rec. Doc. No. 18) reflects the name to be Egan Caregivers.

was told the brakes were ordered but that Egan received the wrong part and had to wait for the correct one.

Robinson also testified that he attempted to use the prison's grievance system to complain about the broken brakes and his fall, but the kiosk would "freeze" and tell him his complaint was pending. He also claims that he requested two or three times through the kiosk to be taken to the hospital, but he got no response and did not go to the hospital.

In connection with the *Spears* Hearing and Robinson's testimony, the Court directed defense counsel to provide documents indicating when the wheelchair brake was replaced, copies of Robinson's grievances related to the broken brake, and any medical care requests after the incident.[3] The inmate grievance records contain only one submission dated April 20, 2019, weeks after the fall, where Robinson complained that the wheelchair brake had been broken since August 7, 2018, and nothing was done about it despite his complaints to prison staff. He also indicated in that grievance complaint that, because it was not repaired, he fell on the floor and was having severe back pain. The response entered by Lisa Ancalade on May 30, 2019, one month later, reads as follows:

> Brake has been replaced. No previous request regarding broken brake found. Informed of broken brake by S. Lott, who attempted to repair the brake but was unable to. Notified Lt. Jourdan who said to obtain the brake through Egan Care. Brake info. obtained from S. Lott and forwarded to Mr. Egan. 1st received wrong brake, notified Mr. Egan who had correct part sent. Brake replaced by Maintenance Officer when received.

Ancalade's response to the grievance did not address Robinson's complaint of injury or pain. However, the records provided also contain a Chronic Care Progress Note dated April 9, 2019, two days after the fall, indicating that Robinson received a routine physical assessment by

---

[3] Rec. Doc. No. 21. The documents received September 5, 2019, have been separately filed in the record under seal.

3

Dr. Charles Mary. The doctor's notes reflect that Robinson complained of "having chronic pain in his entire back" and that Robinson was already receiving Ultram (or tramadol)[4] twice a day for pain. The note does not indicate where Robinson was seen for this visit.

A second Chronic Care Progress Note reflects that Robinson was seen by Dr. Walter Smith on June 24, 2019, for a routine physical assessment. Again, the note does not indicate where the visit took place. Nevertheless, the doctor wrote: "Patient is being seen today secondary to chronic pain. Patient is presently getting pain medication requesting An [sic] increase." The doctor also indicated that he "[w]ill increase pain medication," although the form does not reflect what change was made.

## II.     Standards of Review

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment is appropriate where "the movant shows that there is **no genuine dispute** as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986). In such a case, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn*

---

[4]Ultram is the brand name for tramadol, a medication similar to opioid (narcotic) analgesics used to relieve moderate to moderately severe pain. https://www.webmd.com/.

*Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.,* 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson,* 477 U.S. at 252. The moving party's burden is therefore "understandably heavier" where that party is the plaintiff. *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.,* 829 F. Supp. 2d 437, 447 (E.D. La. 2011).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex,* 477 U.S. at 322–24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson,* 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.,* 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Although the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the nonmoving party. *Anderson,* 477 U.S. at 254.

**III. Analysis**

    **A. Deliberate Indifference**

Ancalade now contends that she was not responsible for Robinson's care and is not a medical director, which is not in dispute, as Robinson confirmed that she was not responsible for

his care. Ancalade contends further that she is a liaison between the administration and medical providers.

To state a claim under § 1983 against state actors, Robinson must establish that each defendant violated his constitutional rights. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

In *Estelle v. Gamble*, 429 U.S. 97, the Supreme Court set the standard of conduct for providing care for an inmate's serious medical needs under the Eighth Amendment. The Court held that deliberate indifference to the health and safety of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id*. at 104. This is true where the indifference is manifested by prison officials or medical personnel in their response to the prisoner's serious medical needs. *Id*. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment being prescribed. *Id*. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The *Farmer* definition applies to Eighth Amendment medical claims. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Thus, for a plaintiff to demonstrate that a prison official has violated his Eighth Amendment right to adequate medical care, he must establish two factors: "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and second, the "prison official must have a

'sufficiently culpable state of mind,' . . . one of "deliberate indifference" to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation and citations omitted).

Robinson orally or in writing notified Ancalade that his wheelchair, his sole means of movement and stability, was in disrepair and they failed to take action to ensure its repair, even if she was a liaison between the administration and medical providers this would constitute deliberate indifference. *See Roberts v. McDonald*, No. 20:11-cv-0474, 2013 WL 3283351, at *8 (E.D. California June 27, 2013) (denying motion to dismiss for failure to state a claim when plaintiff alleged defendants did not repair the wheelchair when he made administrative requests, only conceded the unsafe condition of the chair after plaintiff filed for relief in state court, and then lied about the status of repairs to avoid having it repaired).

Although Ancalade was not responsible for his medical care, if Robinson did make the oral request of her, Ancalade failed to present any evidence, by testimony or affidavit, establishing what she did after the oral communication occurred.

Ancalade further relies upon medical records as a rebuttal to Robinson's contention that she was not deliberately indifferent. This argument however fails.

Accepting as true Ancalade's contention that she was a liaison between medical and the prison administration, the medical records failed to highlight any involvement by her, neither does the Court expect there to be a reference to a liaison in the inmate's medical records. It is true that the records from January 2019 through October 2019 show that Robinson experience pain which was chronic, however the medical records show no connection or relationship with Ancalade. Rec. Doc. 37, at p. 11. Ancalade's reliance on the medical records as evidence does not support her claims about her role in Robinson's care. The Court therefore is constrained to deny the summary judgment on this basis.

### IV. Conclusion

Accordingly,

**IT IS THEREFORE ORDERED that** the **Motion for Summary Judgment (Rec. Doc. 44)** filed pursuant to Fed. R. Civ. P. 56 by Lisa Ancalade is **DENIED**.

New Orleans, Louisiana, this 22nd day of November, 2021.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**